# IN THE SUPREME COURT OF IOWA

No. 18–1504

Filed June 19, 2020

**STATE OF IOWA,**

Appellee,

vs.

**CHAD RICHARD CHAPMAN,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

After entering an *Alford* plea to child endangerment, a defendant appeals a district court order requiring him to register as a sex offender. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Martha J. Lucey, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Zachary Miller, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat, Assistant County Attorney, for appellee.

**OXLEY, Justice.**

In this appeal, we must determine whether the minutes of testimony for a charge to which the defendant makes an *Alford* plea can be used to establish beyond a reasonable doubt that the defendant's underlying conduct was "sexually motivated" for purposes of requiring him to register as a sex offender under Iowa Code section 692A.126 (2017). If not, we must also determine whether the State's failure to introduce sufficient additional evidence at sentencing to meet the statutory reasonable doubt standard requires dismissal of the order requiring sex offender registration or whether the State should get a chance to introduce additional evidence on remand.

The defendant entered an *Alford* plea to child endangerment, a crime that, on its face, does not involve sexual conduct. The district court relied only on the *Alford* plea and a victim impact statement from the child's mother to find the defendant's criminal conduct was sexually motivated and ordered the defendant to register as a sex offender. The court of appeals determined that the evidence was insufficient to prove sexual motivation beyond a reasonable doubt, as required by section 692A.126(1)(*v*), and remanded to give the State a chance to prove sexual motivation. We granted the defendant's application for further review. On our review, we agree with the court of appeals that the evidence was insufficient to prove sexual motivation beyond a reasonable doubt. We also agree that the proper remedy is to remand and give the State an opportunity to prove sexual motivation. Therefore, we affirm the judgment of the court of appeals, reverse the judgment of the district court, and remand to the district court for further proceedings.

## I. Factual Background and Proceedings.

Chad Richard Chapman was charged with two counts of sexual abuse in the second degree in violation of Iowa Code section 709.3, a class "B" felony. Chapman agreed to plead guilty to child endangerment in violation of Iowa Code section 726.6(1)(*a*), an aggravated misdemeanor, in exchange for dismissal of the sex abuse charges. Child endangerment under section 726.6(1)(*a*) does not include sexual conduct as an element of the offense.

According to the minutes of testimony, the charges originated after the six-year-old victim, C.B., reported to her mother, K.Z., that Chapman engaged in inappropriate sexual conduct with her. Chapman babysat C.B. and her eight-year-old brother at his home on Saturdays while their mother was at work. C.B. told K.Z. that Chapman "did S-E-X" to her, including putting his "wiener" on her and licking her "pee-pee." She explained that the conduct occurred at Chapman's home on three occasions, twice recently and once when she was five. She later described the same incidents to investigators.

To establish the factual basis for his plea at the plea hearing, Chapman testified to facts different from those contained in the minutes of testimony. Chapman testified he created a substantial risk to C.B. by allowing her to be unsupervised with her brother after having previously found them "acting out sexually on each other" in his home. The prosecutor asked for a recess following this colloquy, after which Chapman's attorney asked "to withdraw the guilty plea and statement made in support of the factual basis and proceed with" an *Alford* plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970). Chapman ultimately retracted his factual statement, and the court accepted his *Alford* plea. Chapman did not admit guilt but admitted the

evidence identified in the minutes of testimony would support the child endangerment charges against him.

At sentencing, only K.Z. provided a victim impact statement. The state did not have C.B. testify. When the state asked K.Z. what C.B. told her about Chapman's actions, the court sustained a hearsay objection. K.Z. then testified that C.B. had changed significantly as a result of Chapman's actions, including a general avoidance of men, night terrors, falling behind in school, increased protectiveness of her younger sisters, and that she now needs therapy. K.Z. additionally testified:

> Honestly, that's my baby. That's my daughter. It's my child. She's going to be traumatized for the rest of her life. I have to continue to jump through hurdles and help her through this process.
>
> Whether the justice system sees it one way or another, my daughter has issues now. She's very angry. I have to help her with that also. I honest[l]y believe that he should be put behind bars. I mean, at the least he touched my child.
>
> I mean, I could tell you vivid things that he had done to her that I have to deal with as a mother to try to help her understand why those things had happened to her when they shouldn't have happened to her.

The court sentenced Chapman to a two-year suspended sentence and placed him on probation. The State asked the court to find that Chapman's conduct was sexually motivated and order him to be placed on the sex offender registry. Noting that "this was an *Alford* plea, so the court had to go through the minutes of testimony and any other matters that were put in the Court's hands on the date of the plea," the court found sexual motivation was established and placed the defendant on the sex offender registry. The court asked whether a special 10-year sentence placing him in the custody of the department of corrections pursuant to

Iowa Code section 903B.2 would apply, and the State answered in the affirmative, so the court added the special sentence.

At that point, Chapman's counsel and the court had the following exchange:

> MR. KEMP: Your Honor, just for a clear record, the *Alford* plea agreement was that the Court would utilize the minutes of testimony for purposes of only establishing guilt or innocence and the parties would present evidence today regarding sex offender registry.
>
> It's our position that the Court should not consider the minutes of testimony for that portion of it, but the Court is free to do, obviously, as it sees fit.
>
> THE COURT: Even without the minutes of testimony, what was offered here today by the victim's mother is sufficient for me.
>
> MR. KEMP: Okay.

Finally, the court determined Chapman did not have the reasonable ability to pay his court-appointed attorney fees.

Chapman appealed, alleging the following grounds of error: (1) the court erred in finding that Chapman committed a sexually motivated offense, (2) the special sentence was not authorized by law, and (3) the court erred by failing to determine Chapman's reasonable ability to pay before it ordered him to pay costs.[1]

On appeal, the State conceded the special sentence was not authorized under Iowa Code section 903B.2, and the court of appeals vacated that part of Chapman's sentence. The court of appeals also remanded for a determination of Chapman's reasonable ability to pay as a

---

[1]Chapman also challenged the district court's written judgment as erroneously stating he had the ability to pay court-appointed attorney fees. Chapman withdrew this claim of error after the district court amended its order to remove the requirement to pay attorney's fees.

prerequisite to ordering him to pay costs, as required by *State v. Albright*, 925 N.W.2d 144, 160–62 (Iowa 2019).

On Chapman's first issue, the court of appeals identified the question presented as whether substantial evidence existed to prove the offense of conviction was sexually motivated beyond a reasonable doubt. It found the victim statements by K.Z. did not provide sufficient evidence. However, because the minutes of testimony identified evidence to establish the offense could have been sexually motivated, it remanded to give the State another chance to prove sexual motivation.

Chapman applied for further review to challenge the remedy, and we granted his application to resolve that issue.

## II. Standard of Review.

Chapman agrees his appeal involves a challenge to that part of his sentence requiring him to register as a sex offender. Ordinarily, "[r]eview of sentencing decisions is for correction of errors at law." *State v. Letscher*, 888 N.W.2d 880, 883 (Iowa 2016). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Id.* (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)).

However, as the court of appeals noted, Chapman is really raising a sufficiency claim—whether the record contains sufficient evidence to support the district court's determination the offense was sexually motivated. To that extent, our review is for substantial evidence. "In evaluating sufficiency-of-evidence claims, we will uphold a verdict if substantial evidence supports it." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019).

To the extent resolution of this case turns on constitutional principles, our review is de novo. *In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018).

### III. Analysis.

Chapman pleaded to violating subsection (1)(*a*) of Iowa Code section 726.6, which defines "child endangerment" as:

> 1. A person who is the parent, guardian, or person having custody or control over a child . . . commits child endangerment when the person does any of the following:
>
> *a.* Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

Iowa Code § 726.6(1)(*a*). Violation of subsection (1)(*a*) is an aggravated misdemeanor, i.e., an indictable offense. *Id.* § 726.6(7).

Iowa Code section 692A.126 in turn provides:

> If a judge or jury makes a determination, beyond a reasonable doubt, that any of the following offenses for which a conviction has been entered on or after July 1, 2009, are sexually motivated, the person shall be required to register as [a sex offender]:
>
> . . . .
>
> *v.* Any indictable offense in violation of chapter 726 if the offense was committed against a minor or otherwise involves a minor.

*Id.* § 692A.126(1)(*v*). Thus, a person who commits child endangerment is required to register as a sex offender if a judge or jury finds beyond a reasonable doubt that the child endangerment was sexually motivated. "Sexually motivated" "means that one of the purposes for commission of a crime is the purpose of sexual gratification of the perpetrator of the crime." *Id.* § 229A.2(10); *id.* § 692A.101(29).

Chapman argues the State presented insufficient evidence to prove beyond a reasonable doubt that his underlying crime was sexually

motivated. If the State failed to meet its burden, Chapman argues the requirement to register as a sex offender should be vacated and dismissed, similar to an adjudication of guilt found to be unsupported by sufficient evidence on appeal. Thus, he seeks reversal of the court of appeals' remand order, which gives the state a second chance to meet its burden.

**A. Sufficiency of the Evidence.** "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Trane*, 934 N.W.2d at 455 (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "[T]he evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013) (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)).

1. *Minutes of testimony.* We must first identify the record available for the district court's consideration before addressing whether sufficient evidence existed to establish beyond a reasonable doubt that Chapman's criminal offense was sexually motivated. Chapman argues the minutes of testimony should not be considered because he entered an *Alford* plea. Chapman also argues the district court improperly considered K.Z.'s victim impact statement because such statements are not generally subject to evidentiary challenges, made under oath, or subject to cross-examination. *See* Iowa Code § 915.21(1) (allowing a victim to make a statement in writing, by audio or video recording, or through a designated representative); *id.* § 915.21(3) ("A victim shall not be placed under oath and subjected to cross-examination at the sentencing hearing.").

The State counters by arguing the *Alford* plea still required the district court to establish a factual basis, which it could find in the minutes

of testimony, and the only facts in the minutes to support a factual basis for the child endangerment charge were necessarily sexual in nature.

The State is correct that "[t]he district court may not accept a guilty plea without first determining that the plea has a factual basis." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999) (en banc). "This requirement exists even where the plea is an *Alford* plea." *Id.* While minutes of testimony attached to a trial information

> can be used to establish a factual basis for a charge to which a defendant pleads guilty[,] "[t]he sentencing court should only consider those facts contained in the minutes that are admitted to or otherwise established as true."

*State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) (citation omitted) (quoting *State v. Black*, 324 N.W.2d 313, 316 (Iowa 1982)). "Where portions of the minutes are not necessary to establish a factual basis for a plea, they are deemed denied by the defendant and are otherwise unproved and a sentencing court cannot consider or rely on them." *Id.*

"An *Alford* plea is different from a guilty plea in that when a defendant enters an *Alford* plea, he . . . does not admit participation in the acts constituting the crime." *State v. Burgess*, 639 N.W.2d 564, 567 n.1 (Iowa 2001). Nor does he admit that "another, higher crime was committed." *State v. Young*, 292 N.W.2d 432, 436 (Iowa 1980). Rather, the defendant declares that he is choosing to plead guilty to a lesser charge instead of facing trial on a greater charge because the available evidence makes conviction likely, not because he admits he committed the charged crime. *See Alford*, 400 U.S. at 37, 91 S. Ct. at 167.

Thus, unlike a typical guilty plea, when a defendant enters an *Alford* plea, there are no in-court admissions for the court to rely on to establish a factual basis. *See State v. Rodriguez*, 804 N.W.2d 844, 850 (Iowa 2011). "Instead, we look to the rest of the record including the minutes of

testimony to see whether sufficient facts were available to justify counsel in allowing a plea and the court in accepting it." *Id.*; *see also Schminkey*, 597 N.W.2d at 790. The district court properly considered the minutes to establish a factual basis for the child endangerment charge.

However, that does not mean the district court can rely on the minutes to determine whether the underlying crime was sexually motivated for purposes of the sex offender registry. Importantly, when accepting a guilty plea, "[o]ur cases do not require that the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013). While this is true for both a guilty plea and an *Alford* plea, the defendant entering a straight guilty plea generally admits to the underlying facts for his plea as part of the in-court colloquy, whereas a defendant who enters an *Alford* plea maintains his lack of involvement, admitting only that there is sufficient evidence, which, if believed, would allow a jury to find him guilty.

Our legislature established the level of proof needed before a court can order a defendant to register as a sex offender, requiring a judge or jury to find beyond a reasonable doubt that the defendant's criminal conduct was sexually motivated. *See* Iowa Code § 692A.126(1). It is this statutory reasonable doubt requirement, coupled with the lack of any admissions to the underlying facts that accompany an *Alford* plea,[2] that distinguishes the findings needed for sex offender registration from the factual basis needed to support acceptance of the *Alford* plea. While the

---

[2]We do not mean to imply that minutes, alone, could be used to support sex offender registration in a straight guilty plea. The difference in burdens of proof exists whether the plea is under *Alford* or not. However, to the extent a defendant making a straight plea admits any of the facts contained in the minutes in establishing the factual basis for the plea, those admissions could be considered for purposes of sex offender registration.

State makes a persuasive argument that the only facts contained in the record to support a factual basis for Chapman's conviction for child endangerment are necessarily sexual in nature, it fails to account for the different standards of proof. We must give effect to the statutory requirement providing that a district court can order a defendant to register as a sex offender only upon finding beyond a reasonable doubt that the defendant's conduct was sexually motivated.

The Kansas Supreme Court faced an analogous situation when a sentencing court used a factual basis from an *Alford* plea to increase the defendant's postrelease supervision from 12 months to 60 months based on a Kansas statute authorizing the increase if the judge found the crime was sexually motivated. *See State v. Case*, 213 P.3d 429, 435–36 (Kan. 2009). The defendant entered the plea to aggravated child endangerment, the elements of which did not automatically establish the crime was sexually motivated. *Id.* at 432. Absent the defendant's admission to the underlying facts of lewdly fondling a child under the age of 14 and exposing himself to the child, the enhanced supervision would implicate *Apprendi* concerns if based only on the sentencing court's findings without proof beyond a reasonable doubt. *Id.* at 431–32 (discussing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000)). On appeal, the Kansas Supreme Court held the district court improperly relied on the defendant's stipulation for purposes of the *Alford* plea to support the increased sentence. *Id.* at 436–37. "[A]n *Alford* plea . . . does not equate to an admission of facts and does not empower the trial court to make findings based upon those purported admissions to increase the sentence beyond the prescribed statutory maximum." *Id.* at 435–36. While we do not face

*Apprendi* concerns here,[3] the same reasoning applies to the statutory standard requiring proof beyond a reasonable doubt. The concessions made by a defendant entering an *Alford* plea are insufficient alone to allow a finding of the underlying facts beyond a reasonable doubt.

We agree with the court of appeals that because Chapman entered an *Alford* plea, maintaining his position that he did not commit the underlying offense, the district court could not consider facts identified only in the minutes of testimony in determining whether his criminal conduct was sexually motivated. We therefore reject the State's argument that we can consider facts from the minutes the district court necessarily would have relied upon to accept Chapman's *Alford* plea.

2. *Victim impact statement.* We next address whether the victim impact statement supports the sexual motivation finding. When questioned by Chapman's counsel during sentencing, the district court stated the evidence provided through the victim impact testimony was sufficient for it to find Chapman's conduct was sexually motivated. As part of the plea deal, the parties agreed the State would present evidence to prove sexual motivation at the sentencing hearing. There, K.Z. gave a victim impact statement under oath, describing the effects of Chapman's actions on her daughter. We have held that ordinarily the court cannot use victim impact statements to enhance a sentence based on crimes not charged or reduced. *See State v. Phillips*, 561 N.W.2d 355, 359 (Iowa 1997).

---

[3]As discussed below, the sex offender registration requirement is not punitive, so *Apprendi* is not implicated. *See Apprendi*, 530 U.S. at 488–90, 120 S. Ct. at 2362–63 (constitutional challenge applies to "any fact that increases the penalty for a crime beyond the prescribed statutory maximum"); *State v. Aschbrenner*, 926 N.W.2d 240, 244 (Iowa 2019) (Iowa's sex offender registry statute is nonpunitive toward adult offenders).

Regardless of whether it was proper for the district court to consider it, we conclude K.Z.'s victim impact statement did not present sufficient evidence of sexual motivation.[4] Two specific statements are most relevant to that determination: "I mean, at the least he touched my child," and "I mean, I could tell you vivid things that he had done to her." Without the information contained in the minutes of testimony to supplement those statements, and even considering her testimony about the impact of Chapman's conduct on C.B., K.Z.'s statements contain only implications of sexual activity. Those statements alone do not raise a fair inference that Chapman's conduct was sexually motivated. Phrased another way, speculation or conjecture would be required to tie K.Z.'s statements to any particular conduct. Therefore, the State did not present sufficient evidence to establish sexual motivation beyond a reasonable doubt.

**B. The Appropriate Remedy.** In his appeal brief, Chapman argued that "because the determination is a finding of fact equivalent to a verdict, the matter should be treated similarly to lack of sufficient evidence in a trial." The court of appeals disagreed and remanded this case to give the State a chance to prove Chapman's conduct was sexually motivated, citing *State v. Royer*, 632 N.W.2d 905, 909 (Iowa 2001), a case involving remand to establish a factual basis to support a guilty plea. In his application for further review, Chapman argues this was error.

Chapman argues we should treat the determination of sexual motivation under Iowa Code section 692A.126 the same as a contested criminal charge the State fails to prove because they both require proof beyond a reasonable doubt. Chapman relies on Iowa Rule of Criminal

---

[4]Like the court of appeals, because we conclude K.Z.'s testimony was insufficient to prove sexual motivation, we find it unnecessary to decide whether a victim impact statement may be considered for purposes of ordering sex offender registration.

Procedure 2.19(8), which requires the district court to "order the entry of judgment of acquittal of one or more offenses charged in the indictment after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense." When a defendant challenges the sufficiency of the evidence to support a conviction on appeal, "[i]f the trial record would not support a conviction on a given count, [the defendant] is entitled to an acquittal on that count, and further proceedings on that count must come to an end." *Trane*, 934 N.W.2d at 455. Chapman urges us to similarly remand with instructions to dismiss the order requiring him to register as a sex offender.

Chapman's argument against remand fails because being required to register as a sex offender under section 692A.126 is materially different from a criminal charge, at which rule 2.19(8) is directed. Criminal charges found to lack sufficient evidentiary support on appeal are dismissed rather than remanded for a retrial because of the Double Jeopardy Clause. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003). The Double Jeopardy Clause of the Fifth Amendment provides "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "Normally, when error occurs at trial resulting in a reversal of a criminal conviction on appeal, double-jeopardy principles do not prohibit a retrial." *Dullard*, 668 N.W.2d at 597. "An exception exists, however, when the defendant's conviction is reversed on grounds that the evidence was insufficient to sustain the conviction." *Id.* In that situation, double jeopardy principles require that the case be dismissed rather than remanded. *Id.* If the State fails to present sufficient evidence to convict a defendant at trial, the Double Jeopardy Clause prevents the State from trying to prove its case in a second trial. *See Burks v. United States*, 437 U.S. 1, 11, 18, 98 S. Ct. 2141, 2147, 2150–51 (1978) (holding for the first

time "that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient [and] the only 'just' remedy available for that court is the direction of a judgment of acquittal").

*Burks'* reasoning would apply to the case at hand only if section 692A.126 is subject to the Double Jeopardy Clause. "The Double Jeopardy Clause prohibits more than one 'punishment' for the same offense." *State v. Hill*, 555 N.W.2d 697, 699 (Iowa 1996) (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2855 (1993)). Specifically, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997). Thus, the Double Jeopardy Clause would apply here only if requiring registration as a sex offender is a criminal punishment.

"We have previously determined the legislative intent behind enacting chapter 692A was 'to protect the health and safety of individuals, especially children, not to impose punishment.' " *In re T.H.*, 913 N.W.2d at 587 (quoting *State v. Seering*, 701 N.W.2d 655, 667 (Iowa 2005)), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)). We confirmed that "we believe the legislative intent behind our current sex offender statute remains protective and nonpunitive." *Id.* at 588. We nevertheless created an exception as applied to juvenile offenders, concluding "that mandatory sex offender registration for juvenile offenders is sufficiently punitive to amount to imposing criminal punishment." *Id.* at 596.

In *State v. Aschbrenner,* we reaffirmed our prior cases holding that sex offender registration requirements are not punitive when imposed on adults. 926 N.W.2d 240, 244 (Iowa 2019). We distinguished adults from

juveniles "based on the unique concerns of juvenile offenders that are inapplicable to adult offenders." *Id.* at 248 (discussing community re-integration, peer group interaction, that adult criminal records are public while juvenile records are not, and differing recidivism rates). Based on our holding in *Aschbrenner,* we conclude that ordering Chapman to register as a sex offender is not "punishment" to which double jeopardy could attach. Where the double jeopardy basis for dismissing convictions for insufficient evidence has no application to the nonpunitive sex offender registration requirement, we reject Chapman's argument that we should treat this case as a failure to support a criminal charge with sufficient evidence.

Having determined double jeopardy does not require dismissal of the order to register as a sex offender despite insufficient evidence, we turn to the question of what remedy is appropriate. To support its remand order, the court of appeals relied on our cases involving ineffective assistance of counsel in allowing the defendant to plead guilty when the State has failed to establish a factual basis to support the plea. The remedy in that situation is a remand where the State is allowed to supplement the record to establish the missing evidence to support the original plea. *See, e.g.*, *State v. Philo*, 697 N.W.2d 481, 488 (Iowa 2005). Here, however, Chapman has consistently maintained that his actions were not sexually motivated, and he put the State to its burden to prove sexual motivation before he could be required to register as a sex offender. There is a material difference between Chapman putting the State to its burden and a defendant pleading guilty to a charge despite the lack of a factual basis in the record. The court of appeals' reasoning under the *Royer* line of cases does not necessarily allow the State a second chance to prove its case in this context.

However, our sentencing cases do support allowing the State to present additional evidence on remand. Chapman agrees the requirement to register as a sex offender was part of his sentence. The fighting issue in this appeal is whether the minutes could be used to support the registration requirement. When the district court considers impermissible factors in making a sentencing decision, we remand for a new hearing. *See State v. Lovell*, 857 N.W.2d 241, 242–43 (Iowa 2014) (per curiam). In *State v. Black*, we considered the appropriate remedy when the district court improperly relied on evidence in the minutes to lengthen a sentence in a guilty plea. 324 N.W.2d at 316. There, the defendant was originally charged with both burglary and indecent exposure. *Id.* at 314. Despite dismissal of the burglary charge as part of a plea deal, the district court based its sentence partially on the dismissed charge, which we held was error. *Id.* at 314, 316. We remanded for resentencing, directing the district court not to consider the facts arising from the dismissed burglary charge "unless these are admitted to by the defendant *or independently proved.*" *Id.* at 316 (emphasis added); *see also Gonzalez*, 582 N.W.2d at 516–17 (remanding for resentencing after sentencing court improperly considered five dismissed charges, allowing State to put on evidence of defendant's admission to underlying facts of one of dismissed charges).

We recognize there are other contexts in which we have not allowed the State to present additional evidence on remand. In *State v. Gordon*, the State relied on two convictions for burglary to support a habitual-offender sentencing enhancement under Iowa Code section 902.8. 732 N.W.2d 41, 43–44 (Iowa 2007). However, the two burglary convictions the state identified to support habitual-offender status were committed on the same date, which, under our caselaw, could not support the habitual-offender enhancement. *See id.* at 43 (discussing *State v. Freeman*, 705

N.W.2d 286, 291 (Iowa 2005)). Thus, as a matter of law, the defendant was not a habitual offender, and we reversed the sentencing enhancement. *Id.* at 43–44. In addressing the scope of the remand, we rejected the State's request for leave to amend the trial information to identify other prior convictions to meet the habitual offender requirements, noting the State had "pointed to no error in the district court proceeding that would entitle the State to a new hearing." *Id.* at 44.

Here, the district court initially relied on the minutes of testimony and, when challenged, stated that even without the minutes, the victim impact testimony from the child's mother "is sufficient." The district court did not explicitly disavow reliance on the minutes, the facts of which the mother alluded to in her victim impact testimony relied upon by the district court. The victim impact statement itself was insufficient to support the sex offender registration requirement. Nonetheless, evidence exists in the record that, if properly presented to the district court, could establish that Chapman's conduct was sexually motivated.

Chapman does not argue that the requirement for him to register as a sex offender is illegal; he argues only that if the minutes of testimony are properly excluded, there is insufficient evidence to prove the sexual motivation prerequisite to being required to register as a sex offender. Now that we have confirmed that the minutes of testimony may not be considered in determining whether a defendant's offense was sexually motivated where the defendant has entered an *Alford* plea, the State should be afforded a new hearing to properly present evidence that otherwise exists in the record. Chapman's situation is more akin to cases where the district court made a sentencing decision based on improper considerations, like *Black,* than one where the State seeks to amend its

trial information to introduce entirely new evidence into the proceedings on remand, like *Gordon.*

Under these circumstances, we hold that the State is allowed, if it is able, to introduce the facts from the minutes through competent evidence in an effort to support its request that Chapman be required to register as a sex offender.

Our resolution is consistent with the few other jurisdictions we found to have addressed this specific issue. The Kansas Court of Appeals confronted a similar situation under a comparable Kansas sex offender registry statute. *See In re K.B.*, 285 P.3d 389, 393 (Kan. Ct. App. 2012). Addressing inconsistent dispositions in prior cases, the Court reasoned that where there were no double jeopardy concerns, the appropriate disposition was to "remand for an evidentiary hearing for the district court to determine whether the batteries were sexually motivated, if the State seeks such a finding." *Id.*; *cf. State v. Jackson*, 819 N.W.2d 288, 296–97 (Wis. Ct. App. 2012) (remanding for dismissal of sex offender registration requirement premised on unrelated dismissed counts but only after first reviewing the complete record—including the factual allegations contained in the inadmissible criminal complaint—to determine whether any evidence would support a finding that the charged offenses could have been sexually motivated).

We vacate the order requiring Chapman to register as a sex offender and remand for further proceedings, including, if the State chooses to proceed, an evidentiary hearing in which the State may have the opportunity to establish that Chapman's conduct was sexually motivated beyond a reasonable doubt.

**IV. Conclusion.**

For the foregoing reasons, we affirm the decision of the court of appeals and remand this case to the district court for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Appel, J., who concurs specially, and McDonald, J., who takes no part.

**APPEL, Justice (concurring specially).**

I concur with most of the reasoning in the majority opinion. I do not agree, however, with the parts of the court's opinion that reinforce the court's previous erroneous conclusion that Iowa's sex offender registration statute is not punitive in nature. *See State v. Chapman*, ___ N.W.2d ___, ___ n.2, ___ n.4 (Iowa 2020).

The question of whether Iowa's sex offender registration statute is punitive was not raised in this case, or at least not in any meaningful way. As the majority opinion correctly notes, the only sentence in the appellate brief of Chapman that relates to the issue states, "[B]ecause the determination is a finding of fact equivalent to a verdict, the matter should be treated similarly to lack of sufficient evidence in a trial. Therefore, this court should find that the evidence was insufficient . . . ."

This statement expresses a conclusion, not an argument. There is certainly no constitutional argument presented, no constitutional provision cited, and none of the myriad constitutional authorities are cited. Further, the State did not present a constitutional argument in its responsive brief either. It simply cited state law precedent for the proposition that in a guilty plea setting where there is no factual basis for the plea, the State may get an opportunity for a redo. The majority is sailing off into constitutional waters when neither party has mentioned a constitutional provision, cited a constitutional authority, or made a constitutional argument under either the United States or Iowa Constitutions. I do not see the rationale for cementing doubtful constitutional precedent again in a case where the parties did not join the issue.

In any event, the majority's volunteer discussion of the issue of double jeopardy and whether Iowa's sex offender registration laws are punitive is unbalanced and does not reflect the dynamic trends in the law. That is not surprising considering the lack of adversarial presentation on the issue. The majority is not thoroughly examining and choosing between arguments presented by the parties but is expressing a view on the law unaided by the adversarial process.

If I were to revisit the constitutional issue, I would note that the key issue in both double jeopardy and ex post facto contexts is whether the statute imposes "punishment." Whether sex registration and notification laws are "punitive" was considered by the United States Supreme Court in two cases twenty years ago. In *McKune v. Lile*, 536 U.S. 24, 122 S. Ct. 2017 (2002), a narrow majority of the Supreme Court declared that sex offenders have a "frightening and high risk of recidivism" in finding that mandatory disclosures of prior unlawful sexual activity required in a prison program for sexual offenders did not violate the Fifth Amendment. *Id.* at 34, 122 S. Ct. at 2025.

The "frightening and high" risk of recidivism was also offered as a prime justification in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140 (2003), for a holding that Alaska's sex offender registration statute was not punitive in nature and thus did not violate ex post facto principles under the United States Constitution. *Id.* at 103, 123 S. Ct. at 1153.

Courts in Iowa, mesmerized by federal precedent, come high water or not, uncritically cited the "frightening and high" risk of recidivism as revealed truth no fewer than eleven times in Iowa caselaw. These courts engaged in no independent analysis, simply concluding that because the United States Supreme Court said it, it must be true.

Embarrassingly, the "frightening and high" risk of recidivism has been totally eviscerated subsequent to *McKune* and *Smith*. The source of the statement was run into the ground by scholars Tara and Ira Mark Ellman. Through examining the briefing in *McKune*, they determined that the source of the statement was an article published in *Psychology Today* and was "just the unsupported assertion of someone without research expertise who made his living selling . . . counseling programs to prisons." Ira Mark Ellman & Tara Ellman, *"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495, 499 (2015).

If the statement cited in *McKune* and repeated in *Smith* was anecdotal only, what do real empirical studies show with respect to recidivism of sex offenders? In an important meta-analysis, Karl Hanson combined data from twenty-one studies of sex offenders. *Id.* at 501 (citing R. Karl Hanson et al., *High-Risk Sex Offenders May Not Be High Risk Forever*, 29 J. Interpersonal Violence 2792, 2792–813 (2014)). He identified high-risk offenders using the Static 99-R, a frequently used actuarial tool used in many jurisdictions, including Iowa. *Id.* at 502. Among other things, Hanson found that there was no occasion of a high-risk offender who had not committed an offense within fifteen years of their release who committed an offense later. *Id.* In other words, if a high-risk offender makes it for fifteen years without an offense, the odds of recidivism are very low, indeed, flat zero according to his meta-analysis. Yet, registration as a sex offender invariably lasts for life. For low-risk offenders, Hanson found that 97.5% remain offense free after five years, and 95% remain offense free after fifteen years. *Id.* at 504.

Other scholars have scrutinized statistics assembled by the United States Department of Justice. According to one study, the statistics show

that "[n]ot only do few sex offenders get rearrested for committing a new sex crime, but sex offenders are less likely than non-sex offenders to be rearrested for any crime at all."  Tamara Rice Lave, *Throwing Away the Key: Has the Adam Walsh Act Lowered the Threshold for Sexually Violent Predator Commitments Too Far?*, 14 U. Pa. J. Const. L. 391, 396–97 (2011).

State court dominoes are not reliably falling under the pressure of *McKune* and *Smith*.  In 2008, the Alaska Supreme Court reversed its precedent and found the Alaska Sex Offender Registration Act violated the ex post facto clause of the Alaska Constitution.  *See Doe v. State*, 189 P.3d 999, 1019 (Alaska 2008).  In 2009, the Maine Supreme Court followed suit.  *See State v. Letalien*, 985 A.2d 4, 26 (Me. 2009).  That same year, Kentucky joined the parade.  *See Commonwealth v. Baker*, 295 S.W.3d 437, 447 (Ky. 2009).  In 2009 and 2010, the Indiana Supreme Court found application of its state sex offender registration statute unconstitutional as applied in two cases under the Indiana Constitution.  *See Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010); *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009).  In 2013, the Maryland Court of Appeals similarly held that the sex offender registry statute violated the state constitutional provision prohibiting ex post facto laws.  *See Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123, 143 (Md. Ct. App. 2013).  Also in 2013, the Oklahoma Supreme Court followed suit under the Oklahoma ex post facto provision.  *See Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1031 (Okla. 2013).  Finally, in 2015, New Hampshire abandoned the *McKune/Smith* approach.  *See Doe v. State*, 111 A.3d 1077, 1101 (N.H. 2015).

Of course, it is one thing for those pesky independent-minded state courts to go their own way.  Many, but not all, state court judges have opinions independent of federal precedent.  But remarkably, even the

allegiance of federal courts to *McKune/Smith* seems to be fading, at least in some quarters.

For example, in *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the United States Court of Appeals for the Sixth Circuit considered the constitutionality of Michigan's sex offender registration statute. The *Snyder* court noted that although the Michigan statute and the Alaska statute considered in *Smith* had similar core provisions, the Michigan statute was more onerous in a number of ways. *Id.* at 700–03. Specifically, the Michigan statute published information other than that generally available to the public regarding estimated dangerousness of individuals. *Id.* at 702. Further, the Michigan statute had restrictions on where offenders may live and work and, much like parolees, they were required to periodically report in person rather than register by mail or phone. *Id.* at 703.

But the analysis has a strikingly different tone than *Smith*. In particular, the Sixth Circuit emphasized that there was scant support in the record to support the proposition that the Michigan statute advanced its purported goals. The Sixth Circuit noted: "The record below gives a thorough accounting of the significant doubt cast by recent empirical studies on the pronouncement in *Smith* that '[t]he risk of recidivism posed by sex offenders is "frightening and high." ' " *Id.* at 704 (alteration in original) (quoting *Smith*, 538 U.S. at 103, 123 S. Ct. at 1140). The Sixth Circuit cited studies that showed that sex offenders were in fact less likely to recidivate than other criminals and that measures such as the Michigan statute actually increase the risk of recidivism. *Id.* at 704–05.

In the end, the Sixth Circuit determined that the Michigan statute was punitive in character and was an ex post facto law. *Id.* at 705–06. The reasoning in the case, according to one observer, has "transformative

potential." *See generally* Melissa Hamilton, *Constitutional Law and the Role of Scientific Evidence: The Transformative Potential of* Doe v. Snyder, 58 B.C. L. Rev. E-Supplement 34 (2017).

Perhaps the Sixth Circuit decision in *Does #1–5* is an aberration, but I doubt it. The United States Supreme Court denied certiorari in the case. *See Snyder v. Doe #1–5*, 138 S. Ct. 55 (2017). The denial of certiorari is not a ruling on the merits, of course, but it is interesting, and it is consistent with the flurry of recent state court decisions cited above.

And then there is the recent thoughtful and penetrating decision of United States District Court Judge Richard Matsch in *Millard v. Rankin*, 265 F. Supp. 3d 1211 (D. Colo. 2017), in which Judge Matsch considered whether Colorado's Sex Offender Registration Act (SORA) violated the Eighth and Fourteenth Amendments of the United States Constitution. *Id.* at 1214. In a lengthy and typically careful opinion, Judge Matsch weighed the factors considered in *Smith* and concluded that the statute was punitive in nature and disproportionate as applied to one of the defendants. *Id.* at 1232. An appeal was taken up to the Tenth Circuit, which is still pending.

The bottom line is the law is not settled with respect to the nonpunitive nature of sex offender registration statutes. The legal ground beneath *McKune* and *Smith,* never very solid, rumbles and shakes. Sophisticated advocates, including those with an originalist bent, believe the Supreme Court got it wrong in *Smith* and are urging the Supreme Court to revisit the issue. *See* David T. Goldberg & Emily R. Zhang, *Our Fellow American, the Registered Sex Offender*, 2016–2017 Cato Sup. Ct. Rev. 59, 76–77 (2017) (noting that the Supreme Court in *McKune* "offered a litany of deeply problematic factual assertions about 'sex offenders' " and that its estimates of recidivism were "essentially rubbish"); *see also* Wayne

A. Logan, *Challenging the Punitiveness of "New-Generation" SORN Laws*, 21 New Crim. L. Rev. 426, 453, 456 (2018) (noting *Smith* "stands on [an] increasingly shaky precedential foundation" and that state and federal courts are increasingly casting a critical eye on the constitutionality of new generation sex registration and notification laws). The *Smith* case thus represents an approach whose time has passed.

It is true, of course, that our caselaw goes against the grain of the above-cited authorities. *See, e.g., State v. Aschbrenner*, 926 N.W.2d 240 (Iowa 2019). I, of course, joined the dissent in *Aschbrenner*, and my views have not changed. *See id.* at 254 (Wiggins, J., dissenting). But the views of other courts are definitely changing. Further, there may be future cases with new wrinkles that we simply cannot anticipate. Before pouring concrete on a grave where the corpse may need to be exhumed, I would wait for an actual case where the issue is joined by the parties.

I concur in the result in this case; however, as I construe the appellant as simply claiming that if factual support is not provided at a sentencing proceeding and is reversed on appeal, the State is not entitled to introduce additional evidence on remand under our rules related to guilty pleas. That is not our law, as the majority correctly recognizes, and I would therefore leave that issue undisturbed.